## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Kelvin Francisco Rodriguez,

      Plaintiff,

v.

Mark Riley; Troy Appel; and Evan
Eggers, all individuals being sued in
their individual and official capacities;
Worthington Police Department; and
City of Worthington,

      Defendants.

**Civil Action No.: 19-cv-2707 (JRT/ECW)**

**COMPLAINT**

**Jury Trial Demanded**

---

### SUMMARY

Plaintiff Kelvin Francisco Rodriguez was a victim of a violent assault by Defendant Mark Riley, a police officer of the Worthington Police Department, and Riley's ride-a-long friend and business partner, Evan Eggers, who was acting under color of law at all relevant times. The assault broke four of Rodriguez's ribs and lacerated his pancreas and liver. Rodriguez, bleeding internally, repeatedly asked for medical assistance, and his requests were ignored. When medical assistance was finally allowed, Rodriguez underwent multiple surgeries and medical procedures and incurred medical expenses close to $150,000. The assault was in violation of the Fourth Amendment, the delay in his medical

treatment was in violation of the Fourteenth Amendment, and the conduct of the defendants was in violation of state tort laws. Rodriguez brings suit under 42 U.S.C. § 1983. Rodriguez has served notice of his state law claims in compliance with Minn. Stat § 466.05.

## JURISDICTION

1.      This Court has jurisdiction over the claims in this Complaint under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), and 42 U.S.C. §§ 1981, 1983, and 1988.

2.      This Court has supplemental jurisdiction over the supplemental state-law claims under 28 U.S.C. § 1367.

3.      This action arises under the United States Constitution, as applied to state and local authorities through 42 U.S.C. § 1983.

## VENUE

4.      Venue is proper in this district based on 28 U.S.C. § 1391(b). The defendants are residents of this district and the acts or occurrences giving rise to these claims occurred in this district.

## PARTIES

5.      Plaintiff Kelvin Francisco Rodriguez resides in Sheldon, Iowa, and works in Worthington, Minnesota.  Rodriguez is a Latino male and a member of a protected class.

6.      Defendants are all Minnesota municipal entities or individual members of law-enforcement agencies, in an appointed or elected capacity, or Minnesota residents.

7.      Defendant City of Worthington operates the Worthington Police Department (WPD), a law-enforcement agency. The City of Worthington ("City") is a municipality capable of being sued under Minnesota law. The City is the legal entity responsible for the WPD. Plaintiff Rodriguez bases all applicable and appropriate claims against the City of Worthington on the doctrines of respondeat superior or vicarious liability, and municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

8.      Defendant Troy Appel was, at all times relevant, the Chief of Police of the WPD.  He is sued in both his personal, official, and individual capacities under Minn. Stat. § 466.01 *et seq.* and other applicable law.

9.      Defendant Mark Riley was, at all times relevant, an officer in the WPD. He is sued in both his personal, official, and individual capacities under Minn. Stat. § 466.01 *et seq.* and other applicable law.

10.     Defendants Riley and Appel, both law-enforcement officers and employees, were, at all times relevant to this complaint, working as on- or off-duty licensed Minnesota peace officers acting under color of state law and within the scope and course of their official duties and employment as officers.

3

11.     Defendant Evan Eggers is a resident of Worthington, Minnesota and a business partner of Riley. Eggers was a willful participant in the assault that led to Rodriguez's injuries and was acting under color of state law at all relevant times.

## FACTS

### A.     Background of the excessive-force assault on Rodriguez

12.     Rodriguez works at JBS in Worthington. On the evening of January 12, 2019, after work, while driving down 12th Street in Worthington, Rodriguez saw a police car. Fearful of how police treat minorities in Worthington, Rodriguez pulled off the road into the parking lot of an auto dealership and was followed by a police car. The police car was driven by Riley. Eggers, a private citizen acting under color of state law, rode with Riley in the passenger seat as a ride-along. On information and belief, Eggers had no law enforcement training. Eggers dressed in a dark jacket and a dark-blue beanie stocking cap, like Riley and similar to a police officer, and on information and belief, he wore a bullet-proof vest.

13.     Riley and Eggers followed Rodriguez into the dealership's parking lot with their lights and siren off. They had no reason to suspect Rodriguez of any wrongdoing. They followed him solely because they witnessed Rodriguez leave the main road after seeing a police car.

14.     Rodriguez, fearing for his safety, left his vehicle and ran as Riley and Eggers pulled into the parking lot. Riley turned on his squad lights only after Rodriguez had left his car, which caused Rodriguez to turn around immediately to come back to his car. Both Riley and Eggers ran from the police car toward Rodriguez, who approached them with his hands above his head.

15.     As he ran toward Rodriguez, Riley yelled "Get on the fucking ground." Despite speaking and understanding only minimal English, Rodriguez complied with Riley's orders and laid down on the cold ground. But even after Rodriguez complied and was on the ground, Riley continued ordering him to get on the ground.

16.     Eggers got to Rodriguez first. Upon information and belief, Eggers kicked Rodriguez in the back and grabbed his arm before Riley approached them. Riley ordered Rodriguez to place his hands behind his back. Eggers was still holding Rodriguez's arm when Riley arrived.

17.     While Rodriguez was prone and defenseless, Riley approached him and dropped his weight and kneed Rodriguez in the back. Rodriguez cried out in pain. Riley's knee to Rodriguez's back broke four ribs and lacerated both his pancreas and liver. Rodriguez moaned in pain and did not resist.

18.     Riley handcuffed Rodriguez and asked him, "Why you running, man?" Rodriguez was unable to speak. Riley asked again, "Why you running?"

5

Rodriguez was still unable to speak. Riley asked Rodriguez "Why'd you run?" for the third time in ten seconds. Rodriguez, in extreme pain, told Riley, "You hit me." Riley did not respond.

19.     Around this time, WPD Officer Mesman arrived on the scene. Rodriguez was showing obvious signs of pain throughout his arrest. Riley questioned Rodriguez about whether he had been drinking. Rodriguez said no. Riley, who had yet to charge Rodriguez with any crime, asked again "So, why'd you run?"

20.     An officer instructed Rodriguez to lift his knee up. Rodriguez complied but was in pain as he moved. Riley ordered Rodriguez to his butt before having him stand up. As Rodriguez was clearly struggling to stand up, Riley yelled at him four times to "Stand up." Rodriguez gasped and cried out in pain throughout this process.

21.     Once standing, Riley asked Rodriguez, "What's the problem?" Rodriguez replied, "You." When Riley asked "What" again, Rodriguez gasped out, "What happened?" Riley responded, "You ran." Rodriguez tried to clarify what Riley meant, but Riley told him to move toward the car.

22.     Riley briefly spoke Spanish to Rodriguez, asking him why he ran and asking him if he had been drinking. Rodriguez denied drinking and stated

that his back hurt. Rodriguez asked Riley "Why," indicating the pain he was in. Riley answered, "Because you ran."

**B.     Background on the unreasonable delay in medical assistance**

23.     Rodriguez told Riley and Mesman that he needed to go to the hospital. In English, he explained, "You, you pushed me." Riley, Eggers, and Mesman ignored Rodriguez's plea to go to the hospital and put Rodriguez in the back of Riley's squad car.

24.     After Mesman left the scene, Riley administered a breathalyzer to Rodriguez. The test result was within the legal limit. Riley then asked Rodriguez again why he ran, if he had not been drinking. Riley told Rodriguez that he would go to jail for fleeing from an officer.

25.     Riley got in the squad car with Rodriguez in the back seat in extreme pain from the broken ribs and internal bleeding. In English, Rodriguez told Riley, "Go to the hospital, man." Riley said, "What?" Rodriguez repeated, "Go to the hospital." Riley, who had questioned Rodriguez moments ago in Spanish, stated, "I don't speak Spanish." Rodriguez said, "I'm speaking in English. Go to the hospital, need a doctor for me." Despite his repeated requests for medical care, Riley again told Rodriguez, "I don't understand."

26.     Rodriguez continued requesting medical care in English, saying "Doctor. Hospital." Riley finally said, "Why you need a hospital?" Rodriguez

told him, "You no good. You push me too much, man." Riley said, "What?" and started to drive the car away. Rodriguez began spitting. Eggers told Riley that Rodriguez was spitting. Riley responded, "Good."

27.    At WPD headquarters, Riley questioned Rodriguez with Eggers also present. Riley called an interpreter service to talk with Rodriguez in Spanish. Rodriguez was in great pain while Riley questioned him. Rodriguez told the interpreter that he needed a doctor. When Riley asked why, Rodriguez stated that he believed his ribs were broken.

28.    At around 2:40am, Riley ended the questioning and brought Rodriguez to another room. Rodriguez waited another half hour before he was finally taken to a hospital. At 3:13am, he was admitted into Sanford Medical in Worthington. Rodriguez's injuries were so severe that he was airlifted to Sanford Medical in Sioux Falls, South Dakota, where he stayed in the hospital's intensive-care unit for five days.

29.    As a result of defendants' actions, Rodriguez has had multiple surgeries and medical procedures. His medical bills are nearly $150,000.

**C.    Policy violations and WPD reputation**

30.    Rodriguez was afraid of the Worthington police before this incident. He regularly pulls off the street when he sees police cars. The WPD has a

reputation for excessive force. Events proved that Rodriguez was rightly afraid that the WPD would beat him up if they stopped him.

31.     On information and belief, Riley routinely and disproportionately uses force on suspects who are people of color and immigrants.

32.     The WPD has been sued previously for excessive force in *Promvongsa v. Worthington*, 17-5116 WMW/SER (D. Minn) (*Promvongsa*). As part of the settlement in that case, the WPD was required to make substantial changes to its use-of-force policies.

33.     Riley failed to observe those policy changes.

34.     On information and belief, Riley failed to fill out an "Aggression/Resistance Report," commonly referred to as a use of force report.

35.     This failure is normal practice or custom for officers in the WPD, and, on information and belief, the WPD does not discipline officers for failing to document their use of force.

36.     Use-of-force reports are a well-established best practice for police departments, yet WPD has designated these reports as internal documents not to be placed in the case file, depriving criminal defense counsel and members of the public access to those records.

37.     Riley waited an unreasonable length of time before getting Rodriguez medical attention, despite Rodriguez's repeated requests for a doctor

9

or hospital. Riley's delay was potentially deadly because Rodriguez was suffering from significant internal injuries and ultimately needed to be airlifted to a better-equipped hospital to deal with those injuries.

38.   After being told by medical staff of the severity of Rodriguez's injuries, Riley took his handcuffs off of Rodriguez and simply left him at the hospital. Riley later mailed a citation to Rodriguez.

39.   Five days later, WPD Officer Dustin Roemeling interviewed Eggers about the incident involving Rodriguez for two minutes. On information and belief, this was the extent of the investigation into the incident, including Eggers' involvement. During the interview, Eggers admitted that Rodriguez "just gave up" after he and Riley approached him.

**D.   Excessive Force violation**

40.   On January 12, 2019, Rodriguez had a clearly established constitutional right to be free from excessive force. Rodriguez did not pose any threat to Riley, other officers, or civilians. Rodriguez complied with all of Riley's orders. Riley knew or reasonably should have known of the danger he placed Rodriguez into by dropping his knee onto Rodriguez's back. Riley's actions constituted clear excessive force.

41.   Riley knew or reasonably should have known of the danger he placed Rodriguez in by withholding necessary medical services for him for an

unreasonable length of time. Rodriguez communicated his need for a hospital more than ten times while under Riley's control but was ignored.

42.    The WPD and their employees have been sued before for excessive-force violations. On information and belief, the WPD failed to adequately investigate these incidents, or to take corrective action to prevent these excessive-force violations from happening again.

43.    The defendants' actions deprived Rodriguez of his right to be free from excessive force, and they were motivated by an unconstitutional enforced policy, pattern of practice, or custom by the WPD. On information and belief, the WPD fails to enforce its excessive-force policies, even after the settlement in *Promvongsa*. Its officers do not properly document incidents of force, the WPD does not investigate allegations of excessive force, and it engages in a policy, pattern of practice, or custom of failing to reprimand or discipline any officer for excessive force. The defendants' failure to address excessive force by WPD officers amounts to tacit approval of the use of excessive force.

44.    All defendants were acting under color of state law.

45.    The Fourth Amendment of the Constitution of the United States establishes Rodriguez's right to be free from excessive force by defendants. *Small v. McCrystal,* 708 F.3d 997, 1005 (8th Cir. 2013).

46.     Excessive-force claims of pretrial detainees like Rodriguez are analyzed under an objective-reasonableness standard. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017); *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2017).

47.     "Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Brown v. City of Golden Valley*, 574 F.3d 49, 496 (8th Cir 2009). None of those circumstances were present in Rodriguez's case.

**E.     Deliberate-indifference violation**

48.     Riley's actions constituted deliberate indifference to Rodriguez's medical needs. Neither the Fourteenth nor the Eighth Amendment of the Constitution of the United States permit defendants to ignore Rodriguez's obvious medical needs. *Dadd v. Anoka Cty.*, 827 F.3d 749 (8th Cir. 2016).

49.     Riley knew of Rodriguez's injuries immediately as he was the cause of the injury. Rodriguez also told Riley about his injuries 10 times, but Riley ignored Rodriguez's repeated requests for medical assistance.

50.     Instead of giving Rodriguez needed medical aid, Riley repeatedly moved Rodriguez, further aggravating his already-severe injuries. Riley

effectively disregarded the pain that Rodriguez's injuries were causing
Rodriguez.

51.     The defendants' deliberate indifference for Rodriguez's medical
needs violated Rodriguez's constitutional rights.

## COUNT I
### 42 U.S.C. § 1983: Fourth Amendment – Excessive Force
### (Defendants Riley and Eggers)

52.     All previous paragraphs are incorporated herein by reference as
though fully set forth.

53.     Rodriguez makes a claim under 42 USC § 1983 for violation of the
Fourth Amendment of the Constitution of the United States.

54.     Eggers was acting under color of state law at all relevant times.

55.     Riley and Eggers' use of force against Rodriguez was excessive.

56.     Wherefore, as a direct and proximate result of the actions of Riley
and Eggers, Rodriguez has suffered damages in an amount to be determined at
trial.

## COUNT II
### 42 U.S.C. § 1983: Fourteenth Amendment – Due Process
### (Defendants Riley and Eggers)

57.     All previous paragraphs are incorporated herein by reference as
though fully set forth.

58.     Rodriguez makes a claim under 42 USC § 1983 for violation of the right to Due Process under the Fourteenth Amendment of the Constitution of the United States.

59.     The Fourteenth Amendment right to Due Process encompasses the right of an arrestee to be free from deliberately indifferent denials of emergency medical care.

60.     Riley and Eggers were on notice that Rodriguez was injured, was in extreme pain, and was in need of medical care. They deliberately ignored his repeated pleas to be taken to a hospital because of his injuries and unreasonably delayed providing him with acute medical care.

61.     Riley and Eggers' delay in providing access to emergency medical care caused Rodriguez to suffer extreme and unnecessary pain and, on information and belief, further aggravation of his injuries.

62.     Wherefore, as a direct and proximate result of the deliberate indifference and inaction of Riley and Eggers in providing emergency medical care, Rodriguez has suffered damages in an amount to be determined at trial.

## COUNT III
### 42 U.S.C. § 1983: *Monell*
### (Defendants City of Worthington, the WPD, Appel)

63.     All previous paragraphs are incorporated herein by reference as though fully set forth.

64.     At all times relevant, Defendant City of Worthington had a duty to properly train, supervise, and discipline their employees and agents.

65.     The City of Worthington, the WPD, and Appel breached that duty, in part, by:

   a.   Improperly training, authorizing, encouraging or directing officers on proper use of force;
   b.   Failing to investigate allegations of excessive force;
   c.   Failing to discipline officers for violations of policy related to excessive force; and
   d.   Failing to implement the settlement from *Promvongsa*.

66.     The policy, pattern of practice, or custom of condoned misconduct is tacitly or overtly sanctioned, as evidenced by the conduct of Riley and the City, the WPD, and Appel's continued failure to train, supervise, investigate, and discipline Riley.

67.     This unconstitutional behavior of officers is carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons situated such as the Rodriguez.

68.     Appel failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the WPD despite being put on notice of such behavior.

69.     The failure to end this policy, pattern of practice, or custom was a proximate cause of the injuries suffered by Rodriguez.

70.     Wherefore, as a direct and proximate cause of the actions of the

defendants, Rodriguez has suffered damages in an amount to be determined at trial.

## COUNT IV
### Intentional Torts: Assault, Battery, False Arrest, False Imprisonment, Intentional Infliction of Emotional Distress
### (Defendants Riley and Eggers)

71.     All previous paragraphs are incorporated herein by reference as though fully set forth.

72.     Riley is a state actor who was acting under color of state law.

73.     Eggers is a private citizen who acted under color of state law at all relevant times.

74.     Riley's actions alleged above were conducted within the scope of his employment or duties.

75.     The actions of defendants were willful, malicious, and in violation of the known rights of Rodriguez.

76.     On January 12, 2019, Eggers committed assault and battery when he kicked Rodriguez and grabbed his arm.

77.     On January 12, 2019, Riley committed assault and battery on Rodriguez when he intentionally and maliciously dropped his knee onto Rodriguez's back, breaking his ribs and causing severe and potentially life-threatening internal damage.

78.   On January 12, 2019, Riley showed deliberate indifference to Rodriguez's medical needs when he unreasonably withheld medical care from him, causing Rodriguez to suffer severe pain and placing his life in danger.

79.   Riley lacked probable cause or articulated suspicion of any criminal act by Rodriguez when he attacked and handcuffed Rodriguez.

80.   Riley falsely imprisoned Rodriguez in his squad car while he searched for a crime to charge Rodriguez with.

81.   At all times, Rodriguez knew he was imprisoned by Riley.

82.   The defendants' conduct was intentional and done through the assertion of legal authority over Rodriguez.

83.   The defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Rodriguez.

84.   Wherefore, as a direct and proximate cause of the actions of defendants, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT V
### Negligence: Negligent Hiring, Negligent Retention, Negligent Supervision, Negligent Infliction of Emotional Distress
### (Defendants City of Worthington, the WPD, Appel)

85.   All previous paragraphs are incorporated herein by reference as though fully set forth.

86.     All of the individual defendants named in this Complaint are employees, deputies, or agents of municipalities.

87.     All acts of the individual defendants alleged above were conducted within the scope of the defendants' employment or duties.

88.     The City of Worthington and the WPD owed a duty of care to Rodriguez to exercise reasonable care in hiring, retaining, and supervising its employees.

89.     The City of Worthington and the WPD knew or should have known of Riley's dangerous character based on prior complaints of excessive force violations, high number of use of force and aggression/resistance reports by Riley as well as through checks including psychological evaluations.

90.     The City of Worthington and the WPD breached their duty of care to Rodriguez by failing to properly supervise, provide training, and take remedial measures, such as discharge or reassignment, against their employees to ensure the safety of Rodriguez.

91.     As a result of the defendants' negligent acts, Rodriguez reasonably feared for his safety and has suffered severe emotional distress.

92.     Wherefore, as a direct and proximate cause of the actions of defendants, Rodriguez has suffered damages in an amount to be determined at trial.

## DECLARATORY RELIEF

93.    This suit involves an actual controversy within the Court's jurisdiction and the Court may declare the rights of Rodriguez under the Constitution and laws of the United States and the laws of Minnesota and grant such relief as necessary and proper.  Rodriguez seeks declaratory relief on his behalf.

94.    Rodriguez seeks declaratory judgment that the defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions described herein violate the Fourth Amendment to the Constitution of the United States and constitute excessive force in violation of Minnesota state law.

## PRAYER FOR RELIEF

Wherefore, Rodriguez respectfully requests that this Court enter judgment in favor of him and against the defendants, and grant the following:

A.    Enter a declaratory judgment on behalf of Rodriguez that the defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions, described herein, constituted excessive force in violation of the Fourth Amendment and in violation of Minnesota state law;

B.    Enter judgment on behalf of Rodriguez against the defendants for reasonable actual damages sufficient to compensate him for the violation of his Fourth Amendment rights and rights under Minnesota state law;

C.    Permanently enjoin and prohibit defendants from interfering with Rodriguez's constitutional rights. Specifically, to enjoin defendants from:

     a.  Retaliating against Rodriguez or his family for bringing this lawsuit; and

     b.  Subjecting Rodriguez to excessive force in the future;

D.    Enter judgment requiring the defendants to pay punitive and other exemplary damages;

E.    Enter judgment requiring the defendants to pay Rodriguez's attorney's fees and costs as authorized by 42 U.S.C. §1988; pre-judgement interest and any other relief deemed necessary and proper; and

F.    Grant all other and additional relief to which Rodriguez may be entitled.

Dated: October 16, 2019                    s/Ian Bratlie

                                       Ian Bratlie (No. 319454)
                                       American Civil Liberties Union
                                       of Minnesota
                                       709 South Front Street, Suite 1B
                                       Mankato, MN 56001
                                       Tel: (651) 645-4097
                                       Fax: (651) 647-5948
                                     ibratlie@aclu-mn.org

Teresa Nelson (No. 269736)
American Civil Liberties Union
of Minnesota
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 645-4097
Fax: (651) 647-5948
tnelson@aclu-mn.org

*Counsel for Plaintiff Kelvin Rodriguez*