# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KELVIN FRANCISCO RODRIGUEZ, | Case No. 19-cv-2707 (JRT/ECW) |
| Plaintiff, | |
| v. | **ORDER** |
| MARK RILEY; TROY APPEL; AND EVAN EGGERS, all individuals being sued in their individual and official capacities; WORTHINGTON POLICE DEPARTMENT; and CITY OF WORTHINGTON, | |
| Defendants. | |

This matter is before the Court on Defendants' Rule 37 Motion to Compel Discovery Responses (Dkt. 41) ("Motion"). For the reasons stated forth below the Motion is granted in part and denied in part.

## I.    BACKGROUND

**A.    Factual Background**

The present action relates to Plaintiff Kelvin Francisco Rodriguez's ("Rodriguez") claims for what he asserts was excessive force used on him during his January 12, 2019 arrest by law enforcement. (Dkt. 6.) The Amended Complaint alleges in relevant part as follows: Rodriguez works at JBS in Worthington, Minnesota. (*Id.* ¶ 12.) On the evening of January 12, 2019, after work, while driving down East 12th Street in Worthington,

Rodriguez saw a police car.[1]  (*Id.* ¶ 12.)  Fearful of how police treat minorities in Worthington, Rodriguez pulled off the road into the parking lot of an auto dealership and was followed by a police car.  (*Id.* ¶ 12.)  The police car was driven by Defendant Mark Riley ("Officer Riley") who is a law enforcement officer employed by Defendant City of Worthington.  (*Id.* ¶¶ 9, 11-12.)  Defendant Evan Eggers ("Eggers") is a private citizen who rode with Officer Riley in the passenger seat as a ride-along during the events in question.  (*Id.* ¶ 12.)  Officer Riley and Eggers followed Rodriguez into the dealership's parking lot with their lights and siren off.  (*Id.* ¶ 13.)  They had no reason to suspect Rodriguez of any wrongdoing.  (*Id.* ¶ 13.)  They followed him solely because they witnessed Rodriguez leave the main road after seeing a police car.  (*Id.* ¶ 13.)

      Rodriguez, fearing for his safety, left his vehicle and ran as Officer Riley and Eggers pulled into the parking lot.  (*Id.* ¶ 14.)  Officer Riley turned on his squad lights only after Rodriguez had left his car, which caused Rodriguez to turn around immediately to come back to his car.  (*Id.* ¶ 14.)  Both Officer Riley and Eggers ran from the police car toward Rodriguez, who approached them with his hands above his head.  (*Id.* ¶ 14.)  As a result of the subsequent apprehension and arrest, it is alleged that Defendants Officer Riley and Eggers used excessive force and denied him medical assistance leading to Rodriguez suffering severe injuries, including a partially collapsed lung, internal bleeding, a severely lacerated liver, and injury to his spleen.  (*Id.* ¶¶ 13-29.)  During the altercation between the parties, Rodriguez was asked if he had been drinking, which

---

[1]    During the hearing, counsel for Rodriguez clarified that "the evening of January 12" meant the early morning hours of January 12, 2019.

Rodriguez denied. (*Id.* ¶ 22.) Riley administered a breathalyzer to Rodriguez. (*Id.* ¶ 24.) The test result was within the legal limit. (*Id.* ¶ 24.)

Rodriguez has asserted a number of claims against Defendants Officer Riley and Eggers for excessive force in violation of the Fourth Amendment and violation of his Due Process rights under the Fourteenth Amendment, as well as a number of state tort claims against all of the Defendants. (*Id.* ¶¶ 54-63, 72-93.)

In addition, Rodriguez asserts a *Monell* claim against Defendants City of Worthington, the Worthington Police Department ("WPD"), and Worthington Chief of Police Troy Appel ("Chief Appel") for failing to properly train, supervise, and discipline their employees and agents with respect to excessive force claims that they knew were a problem. (*Id.* ¶¶ 65-67.) Further, the *Monell* claim asserts that Chief Appel and WPD's actions deprived Rodriguez of his right to be free from excessive force, and they were motivated by an unconstitutional enforced policy, pattern of practice, or custom by the WPD, as evidenced by the conduct of Officer Riley and Eggers and the WPD. (*Id.* ¶¶ 31-34, 44, 67-69.) In this regard, Rodriguez asserts in part that he was afraid of the WPD before this incident and regularly pulls off the street when he sees police cars, as the WPD has a reputation for excessive force. (*Id.* ¶¶ 31-32.)

**B.     Procedural Background**

Defendants' present Motion sought to compel several categories of documents. With respect to Interrogatory No. 6, Defendants sought a detailed narrative from Rodriguez regarding all the events that occurred between his departure from JBS through the moments he allegedly pulled off the road and into an auto dealership. Request for

3

Production Nos. 23-26 seek information regarding Rodriguez's communications. Request for Production No. 28 sought the invoices from the cellular telephone service providers for the cell phone number allegedly belonging to Rodriquez. Finally, Interrogatories Nos. 13-17 and Request for Production Nos. 3-4 sought medical information with respect to Rodriquez's alleged injuries.

At the hearing on the Motion, Defendants' counsel represented that there was currently no issue with respect to Request for Production No. 28 on the basis that additional discovery responses were forthcoming. As such, the Motion with respect to Request for Production No. 28 is denied without prejudice.

As part of the hearing on the Motion, the Court ordered the parties to conduct a further meet and confer as follows:

> As to Interrogatory No. 6, the parties shall meet and confer to determine if a resolution can be reached with respect to a summary timeline based on the representations of the parties at the hearing.
>
> As to Interrogatories Nos. 13-17 and Request Production Nos. 3-4, the parties shall in good faith conduct a meet and confer to determine if a medical authorization can be crafted by the parties with respect to Plaintiff's physical health that will resolve the Motion to Compel regarding these discovery requests.

(Dkt. 55.)

On July 20, 2020, the parties reported to the Court regarding the outcome of the ordered meet and confer:

> Per the July 6, 2020 Minute Entry (ECF Doc. #55) the parties have met and conferred in regard to Interrogatories Nos. 6, 13-17 and Request for Production Nos. 3-4. An agreement has been reached with respect to Interrogatories Nos. 6, 13-17 and Request for Production Nos. 3-4. The

> Court need not issue an Order with respect to Interrogatories Nos. 6, 13-17 and/or Request for Production Nos. 3-4.

(Dkt. 56.) Given the parties' agreement, the Court denies the Motion as moot with respect to Interrogatories Nos. 6 and 13-17 and Request for Production Nos. 3-4.

Therefore, the only remaining active dispute between the parties as to Defendants' Motion pertains to Request for Production Nos. 23-26, which the Court addresses below.

## II.  LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). While Rule 26 contemplates a liberal scope of discovery, this Court "possess[es] considerable discretion in determining the need for, and form of, discovery . . . ." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015) (citations omitted).

Further, not only must information sought in discovery be relevant, it must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In determining proportionality, courts consider numerous factors, including 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving

5

the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Beseke v. Equifax Info. Servs., LLC*, No. 17-CV-4971-DWF-KMM, 2018 WL 6040016, at *3 (D. Minn. Oct. 18, 2018); *see also Klein v. Affiliated Grp., Inc.*, No. 18-CV-949 DWF/ECW, 2019 WL 1307884, at *3 (D. Minn. Mar. 22, 2019). To this end, a court upon a motion or on its own "must" limit discovery, when the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or if the discovery is outside of the scope of Rule 26(b)(1). *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

### III.   ANALYSIS

As stated previously, the remaining discovery dispute at issue relates to Request for Production Nos. 23-26.

**A.   Request No. 23: Seeking All Correspondence from January 11, 2019 to January 13, 2019**

> **REQUEST NO. 23.** Copies of any correspondence, including but not limited to text messages, call history logs, e-mails, and social media messages, between you and another person from January 11, 2019 to January 13, 2019.
>
> Response: Plaintiff objects to the scope of this Request as to requesting non-relevant documents outside the scope of this lawsuit. Notwithstanding this objection, Plaintiff will produce responsive documents that are relevant to the claims or defenses in this lawsuit and which were created between January 12, 2019 and January 13, 2019.

(Dkts. 45-3, 45-6.)

6

Defendants assert that Request No. 23 asks Rodriguez to provide them with copies of communications Rodriguez had prior to his interaction with Defendants so as to allow them to identify witnesses and documents bearing on the background events.  (Dkt. 44 at 8.)  In particular, Defendants claim that Plaintiff's counsel has acknowledged that Rodriguez was involved in a physical altercation during this timeframe and before the incident giving rise to this lawsuit, which is relevant to his claims of injury in this case.  (*Id.*at 8.)  During the hearing, Rodriguez's counsel acknowledged that Plaintiff was near a "bar fight" and did not deny the claimed altercation in his memoranda, yet argued that Defendants fail to offer any connection between communications sent and received before that altercation and the actual claims and defenses in this litigation.  (Dkt. 47 at 5, 12-13.)

The Court is troubled by the breadth of this request.  This request covers any communication regardless of the subject matter of the communication.  Defendants have not shown that the breadth of the discovery sought is relevant to the claims in this case.  Defendants' generic and conclusory statement that the information is relevant to Rodriguez's injuries and, consequently, damages, is not sufficient, especially considering Rodriquez's response to Request No. 23 is that he would produce communications relevant to the actual claims and defenses in the litigation created between January 12, 2019 and January 13, 2019.  As to communications on January 11, 2019, Defendants have not explained how those communications would be relevant to Rodriguez's injuries, and the Court notes that a related WPD case file indicates that the "bar fight" occurred early in the morning of January 12, 2019, as the officer dispatched "for an assault"

7

involving "more than one individual" was dispatched at approximately 2:11 a.m. on January 12, 2019.  (Dkt. 51-4 at 9.)  Moreover, the Court will not blue-pencil Defendants' discovery requests to reflect what, based on the claims asserted in the Complaint, is relevant and proportional.  *See generally Catlin v. Wal-Mart Stores, Inc.*, No. 015CV00004DWFKMM, 2016 WL 7974069, at *4 (D. Minn. Aug. 12, 2016).  To the extent that Defendants wish to narrow their request if they do not receive the information they seek with respect to Rodriquez's alleged injuries, they may do so.  As such, the Motion with respect to Request No. 23 is denied.

**B.     Request Nos. 24-25: Seeking All Communications Between Plaintiff and Specified Persons**

> **REQUEST NO. 24.** Copies of any correspondence, including but not limited to text messages, call history logs, e-mails, and social media messages, between you and Angel Francisco Mercado-Molina from January 1, 2018 to the time of production or of supplemental production.
>
> Response: Plaintiff objects to the scope of this Request as to requesting non-relevant documents outside the scope of this lawsuit.  Notwithstanding this objection, Plaintiff will produce responsive documents that are relevant to the claims or defenses in this lawsuit and which were created between January 12, 2019 and the present.
>
> **REQUEST NO. 25.** Copies of any correspondence, including but not limited to text messages, call history logs, e-mails, and social media messages, between you and Juan Carlos Sermo from January 1, 2018 to the time of production or of supplemental production.
>
> Response: Plaintiff objects to the scope of this Request as to requesting non-relevant documents outside the scope of this lawsuit.  Notwithstanding this objection, Plaintiff will produce responsive documents that are relevant to the claims or defenses in this lawsuit and which were created between January 12, 2019 and the present.

(Dkts. 45-3, 45-6.)

8

Request Nos. 24 and 25 ask Rodriguez to provide copies of communications with individuals that Defendants claim were his two "co-assailants" during the altercation prior to his contact with Defendants, from January 1, 2018 to the time of production.[2] (Dkt. 44 at 9.)  According to Defendants, these communications are relevant to understanding the relationship between Rodriguez and the identified persons, and the circumstances leading to the assault on the morning of January 12, 2019.  (*Id.* at 9.)  In addition, Defendants argue that Requests Nos. 24 and 25 could provide further insight into Rodriguez's motivations for acting how he did at the time of the interaction with Defendants.  (*Id.* at 10.)  Rodriguez counters that Defendants have failed to even provide the threshold showing of relevancy necessary before discovery of evidence of what precipitated the altercation between Plaintiff and the identified persons would be required.  (Dkt. 47 at 11-12.)

Similar to Request No. 23, Defendants have not shown that the breadth of the discovery sought (*i.e.*, temporal and subject matter scope) is relevant to the claims in this case.  These requests are more akin to a search warrant as to the alleged altercation between Rodriguez and the identified persons than civil discovery seeking relevant information regarding the claims in this matter.  To the extent that Rodriguez's reasoning for fleeing from Defendants is relevant to the claims in this case, the breadth and harassing nature of these requests by Defendants—spanning a period of over two-and-a-

---

[2]    At the hearing, counsel for Defendants stated that Rodriguez pleaded guilty to disorderly conduct, but not assault, with respect to the earlier altercation, and that no additional charges are anticipated to be brought against Rodriguez with respect to that altercation.

half years and dealing with any communication regardless of the topic—are not proportional to the needs of the case. Again, the Court will not blue-pencil Defendants' discovery requests to reflect what, based on the claims asserted in the Complaint, is relevant and proportional. Therefore, the Motion with respect to Request Nos. 24 and 25 is denied.

C. **Request No. 26: Seeking All Communications that Reference Defendants**

> **REQUEST NO. 26.** Copies of any correspondence, including but not limited to text messages, e-mails, and social media messages, referencing Defendants, the City, or your claims in this action, from January 1, 2018 to the time of production or of supplemental production.
>
> Response: Plaintiff objects to the scope of this Request as to requesting non-relevant documents outside the scope of this lawsuit. Notwithstanding this objection, Plaintiff will produce responsive documents that are relevant to the claims or defenses in this lawsuit and which were created between January 12, 2019 and the present.

(Dkts. 45-3, 45-6.)

Defendants contend that Request No. 26 is relevant to Rodriguez's professed motivation as to why he fled and his claim that he fled because he was fearful of how police treat minorities in Worthington. (Dkt. 44 at 10-11.) Plaintiff argues that Defendants never explain how any of that information pertains to Rodriguez's claims, or to Defendants' defenses, and that even if he was fearful of police, that did not justify the force used on his person. (Dkt. 47 at 11-12.)

Rodriguez has put at issue his fear of the WPD as the reason why he evaded the police in the operative Amended Complaint. (Dkt. 6 ¶¶ 12, 14, 31.) Defendants should

10

be able to test that factual allegation through any of the requested correspondence that mentions the WPD, Officer Riley, and/or Chief Appel.

In addition, the Court notes that Rodriguez has asserted a *Monell* claim alleging that the excessive force he suffered was motivated by an unconstitutional enforced policy, pattern of practice, or custom by the WPD, as evidenced by the conduct of Officer Riley, Chief Appel, the City of Worthington, and the WPD. (Dkt. 6 ¶ 67.) A custom under *Monell* is demonstrated in part by showing the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees . . . ." *Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (quotation marks and citations omitted). As such, any communication that discusses the conduct of police may lead to relevant evidence regarding a widespread pattern of unlawful conduct as alleged in the Amended Complaint. In addition, communications from Rodriguez pertaining to the WPD may be relevant to the injuries he is alleged to have suffered.

As such, the Court grants the motion to compel with respect to Request No. 26, but only as it relates to correspondence referencing the WPD, Officer Riley, and/or Chief Appel. The request for correspondence referencing the City of Worthington is overbroad (encompassing communications possibly dealing with unrelated City services or conduct), and any relevant correspondence dealing with its conduct will be encompassed by correspondence referencing the other Defendants.

To the extent that Rodriguez claims that any responsive correspondence is governed by an applicable privilege, he may withhold production of those documents and

produce a privilege log to Defendants consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure.

## IV.   ORDER

Based on the files, records, and proceedings herein,

**IT IS ORDERED THAT:** Defendants' Rule 37 Motion to Compel Discovery Responses (Dkt. 41) is **GRANTED** in part and **DENIED** in part as follows:

1.   Defendants' Motion is **DENIED** as moot with respect to Interrogatories Nos. 6 and 13-17 and Request for Production Nos. 3-4.

2.   Defendants' Motion is **DENIED** without prejudice with respect to Request for Production No. 28.

3.   Defendants' Motion is **DENIED** with respect to Request for Production Nos. 23-25.

4.   Defendants' Motion is **GRANTED** in part and **DENIED** in part with respect to Request No. 26.  Plaintiff shall produce to Defendants any responsive documents that reference Mark Riley, Troy Appel, and/or the Worthington Police Department.

5.   Plaintiff shall produce responsive documents consistent with this Order on or before **September 14, 2020**, as well as a privilege log for any responsive documents to Request No. 26 that are being withheld.[3]

---

[3]   This requirement will be stayed to the extent that the Court's decision is appealed by either of the parties.

6. Defendants' request for reasonable expenses incurred in bringing their Motion is **DENIED**, as Plaintiff's responses and objections were substantially justified.

DATED: August 17, 2020                         <u>*s/Elizabeth Cowan Wright*</u>
                                               ELIZABETH COWAN WRIGHT
                                               United States Magistrate Judge